SMELSEY v. GUARANTEE FINANCE CORP.

1. VENDOR AND PURCHASER—POSSESSION—CONSTRUCTIVE NOTICE.
   Generally, possession of real estate is constructive notice of .title in the possessor.

2. NOTICE—POSSESSION—RECORD.
   Constructive notice of title by possession is a legal deduction from the fact of possession and is equal to constructive notice by record.

3. VENDOR AND PURCHASER—NOTICE—PROBATE FILES.
   Subsequent purchaser of undivided 1/4 interest in dwelling house whose agent had previously examined probate files was charged with actual knowledge that such files disclosed common antecedent title holder had sold premises on land contract (3 Comp. Laws 1929, § 13304; Act No. 288, chap. 1, § 28, Pub. Acts 1939).

4. SAME—UNRECORDED DEED—UNDIVIDED INTEREST—GOOD FAITH.
   The unrecorded deed of an antecedent purchaser of an undivided interest in land is not void as to a subsequent purchaser unless the latter became such in good faith (3 Comp. Laws 1929, § 13304).

5. NOTICE—AVOIDANCE OF INQUIRY.
   If one has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making, such inquiries, he must be taken to have notice of those facts which, if he had used such ordinary diligence, he would have readily ascertained.

6. EJECTMENT — UNDIVIDED INTEREST — SUBSEQUENT PURCHASER — GOOD FAITH.
   · Plaintiff in action of ejectment, a subsequent purchaser of an undivided 1/4 interest in land, who knew defendants held at least a 1/4 interest in the land but studiously avoided making inquiry of defendants who also held a prior unrecorded

deed of the same 1/4 interest which plaintiff bought and held
an unrecorded vendee interest in the entire property, is *held*,
not entitled to prevail since he was not a purchaser in good
faith and defendants' deed was not void as to him (3 Comp.
Laws 1929, § 13304).

WIEST and SHARPE, JJ., dissenting.

Appeal from Wayne; Chenot (James E.), J. Submitted October 3, 1944. (Docket No. 19, Calendar No. 42,792.) Decided February 20, 1945.

Ejectment by Meyer Smelsey against Guarantee Finance Corporation, a Michigan corporation, and Aubrey Gooze, doing business as Guaranty Management Company. Judgment for plaintiff. Defendants appeal. Reversed and remanded for entry of judgment for defendants.

*Meyer Weisenfeld,* for plaintiff.

*Munro, Smilay, Covey & Brown,* for defendants.

SHARPE, J. (*dissenting*). This is an action in ejectment brought by plaintiff, Meyer Smelsey, against Guarantee Finance Corporation and Aubrey Gooze, doing business as Guaranty Management Company, as the principal defendants. The parties in physical possession of the premises as tenants under the principal defendants are also joined as defendants. The property involved is a ¼ interest in a dwelling house located at 2819 Fourth Street, Detroit, Michigan.

In 1895, Mary R. Hascall was the owner of the above property. She died, and in 1925 her husband, Jeremiah H. Hascall, became the owner. Jeremiah H. Hascall died intestate, and on May 24, 1927, an order was entered in the Wayne county probate court assigning the residue of his estate to his heirs.

The ¼ interest involved herein was assigned to Mary E. Moore, a sister of deceased, who, on August 2, 1927, conveyed the same to Robert Hascall Moore. On May 5, 1943, Robert Hascall Moore and wife conveyed their undivided ¼ interest to plaintiff by quitclaim deed, and the same was recorded May 17, 1943, at 12:33 p.m.

It also appears that Robert Hascall Moore on June 15, 1936, deeded the same quarter interest to defendant Guarantee Finance Corporation. This deed was recorded 46 minutes after plaintiff's deed was recorded.

As a further statement of facts the record shows that on January 8, 1926, Jeremiah H. Hascall entered into a land contract for the sale of said premises to Leslie A. B. Walsh. This contract was not recorded. After the execution of the above contract Jeremiah H. Hascall died intestate and his estate was the subject of probate proceedings in the Wayne county probate court. Subsequently, an order was entered allowing the final account and assigning the residue of said estate to the heirs at law as follows: ¼ interest to George Hascall; ¼ interest to Mary E. Moore; ⅛ interest to Elton F. Hascall; ⅛ interest to Florence Butler; ⅛ interest to Jennie M. Smith; and ⅛ interest to Nellie Stoddard.

On November 21, 1928, Leslie A. B. Walsh assigned his interest in the land contract to Laurier Schantz. This assignment was not recorded.

On April 3, 1936, Laurier Schantz and wife assigned their interest in the contract to Guarantee Finance Corporation. This assignment was not recorded, but since said date defendants, by their tenants, have been in possession.

On June 12, 1936, Florence Butler and Jennie Smith conveyed their interest in said property to

Guarantee Finance Corporation. This instrument was recorded.

July 25, 1936, Nellie Stoddard and Elton F. Hascall conveyed their interest in said property to Guarantee Finance Corporation. This instrument was also recorded.

It also appears that one Meyer Ostrow was the agent of plaintiff. Mr. Ostrow's business was the buying and selling of real estate. He made the purchase of the property for plaintiff. Before he purchased the property he searched the records in the office of the register of deeds for Wayne county and found a record of a deed to the Guarantee Finance Corporation of a ¼ interest in the property he was about to purchase. He also checked the tax rolls and found a Mr. Hackett's name as one to whom the property was assessed. He contacted Mr. Hackett but Mr. Hackett disclaimed any interest in the property. He then consulted the Burton Abstract Company and found a quitclaim deed from Florence Butler and Jennie Smith to Guarantee Finance Corporation of their interests in the property. He also went to the premises and inquired of the tenant as to what rights she claimed in the property, but was given no information except that she was running a rooming house. He made no inquiry of defendants, claiming that defendants were attempting to buy the same rights as he was attempting to buy, and he believed he would get information from them which would be misleading.

The sole question in this case is whether plaintiff, Meyer Smelsey, by having recorded his quitclaim deed from Robert Hascall Moore and wife 46 minutes before defendants recorded their quitclaim deed, executed by the same grantor some seven years before, has, by virtue of the provisions of 3 Comp. Laws 1929, § 13304 (Stat. Ann. § 26.547),

voided the title and rights acquired by defendants.

The trial court found that plaintiff was the owner of the ¼ interest, and held that Meyer Ostrow had made sufficient inquiries before making the purchase, as is required by the foregoing statute.

Defendants appeal and urge that plaintiff may not claim the status of purchaser in good faith under the provisions of the statute hereinbefore mentioned. It is the claim of plaintiff that defendants' possession of the premises was not of such nature as to make it constructive notice of defendants' unrecorded claims of title and right of possession in the premises; that plaintiff paid a valuable consideration for the deed; that he purchased the same in reliance upon the recorded chain of title and the records in the office of the register of deeds, and that he made such inquiry as is required by law.

We shall first discuss possession of the premises by the tenant of defendant. The final order of assignment of the probate court vested undivided interests in the premises, and the owners of such interests became tenants in common of the property. When defendants purchased an undivided ¼ interest in the premises by quitclaim deed from Florence Butler and Jennie Smith on June 12, 1936, and recorded the same on June 8, 1937, they became tenants in common with the owners of the remaining interests. As tenants in common of an undivided interest defendants had a right to possession of the entire premises.

In 7 R. C. L. p. 820, § 14, the rule is stated as follows:

"It is a universal rule that the possession of one cotenant is the possession of all, and each has the present right to enter upon the whole land and upon every part of it, and to occupy and enjoy the

whole," citing cases including *Metcalfe* v. *Miller,* 96 Mich. 459 (35 Am. St. Rep. 617).

In *Metcalfe* v. *Miller, supra,* we said:

"The only characteristic common to tenants in common is that of undivided possession. * * * Not only is the possession of one the possession of all, but the tenants respectively have the present right to enter upon the whole land, and upon every part of it, and to occupy and enjoy the whole."

Under the foregoing authority the possession of the whole premises by defendants was consistent with their rights under their recorded deed to an undivided interest in the premises at the time plaintiff purchased an undivided ¼ interest. Such possession by the defendants cannot be held to be constructive notice of any claim of additional or greater rights, or place the duty of further inquiry upon plaintiff because of such possession. It is to be noted that no claim is made that plaintiff had any actual notice or knowledge of the unrecorded deed or assignment of land contract. The land contract was in the files of the probate court. In our opinion "a subsequent purchaser in good faith," as mentioned in the statute (3 Comp. Laws 1929, § 13304 [Stat. Ann. § 26.547]) is not required to examine minutely the probate court files of an estate to seek for an unknown land contract.

We are in accord with the following from the opinion of the trial court:

"As to his diligence, his good faith, his notice, the inquiry which he made, the search which he made, I think, considering this record as a whole that he has made a reasonable search. I will put it this way. I think that he has exercised the reasonable diligence required of him by the law before pur-

chasing this property, and that he has conducted himself, as far as this record is concerned, in a manner which satisfies the legal requirements, under the testimony, as to good faith, and the consideration is shown and undisputed."

The record contains competent testimony that plaintiff paid a valuable consideration for his deed and that he purchased said property in good faith. His actions comply with the statutory requirements.

The judgment should be affirmed, with costs to plaintiff.

WIEST, J., concurred with SHARPE, J.

BOYLES, J. I am for reversal. Plaintiff was not a purchaser in good faith when he took the quitclaim deed of an undivided ¼ interest in this property from Robert Hascall Moore who held a mere naked *record* title but who had already conveyed his title to the defendants by an unrecorded quitclaim deed. The facts and circumstances disclosed to Ostrow, the agent or alter ego of plaintiff in the transaction, were such as to require that plaintiff make inquiry as to the title from the defendants known to be in possession of the property. Defendants had been continuously in possession of the premises since 1936. Plaintiff had actual knowledge of defendants' possession prior to the time plaintiff acquired any ostensible title or interest therein. In *American Cedar & Lumber Co.* v. *Gustin,* 236 Mich. 351, 359, this court has said:

"It is elementary that as a general rule possession of real estate is constructive notice of title in the possessor.

" 'Constructive notice by possession is equal to constructive notice by record.' *Fraser* v. *Fleming,* 190 Mich. 238, 244.

"Notice in such cases is a legal deduction from the fact of possession. *Delosh* v. *Delosh,* 171 Mich. 175."

Ostrow admitted knowing that defendants were in possession, and gave as his excuse for failing to contact the defendants "that they were attempting to buy the same rights I was trying to buy." Had Ostrow made inquiry from defendants as to the ownership of the ¼ interest in question he would undoubtedly have learned that the defendants were *not* attempting to buy this same right, for the simple reason that the defendants had already acquired it, by quitclaim deed, from the same Robert Hascall Moore whose quitclaim deed Ostrow proceeded to obtain.

Furthermore, the probate court records and proceedings examined by Ostrow, of which plaintiff must be charged with actual knowledge (Act No. 288, chap. 1, § 28, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 16289–1 (28), Stat. Ann. 1943 Rev. § 27.3178 (28)]), establish the fact that this property was owned by one Jeremiah H. Hascall who died intestate in 1926; that the interest of the Hascall estate in the property in question consisted of an equity in a land contract whereby Hascall as vendor during his lifetime had sold this property to one Leslie A. B. Walsh. By means of regular assignments of the vendee's interest in this land contract the defendants acquired the entire vendee's interest and rights in the entire property (including the right to possession of the entire property) in 1936. This contract and the assignments were not recorded, but the defendants went into possession of the entire property in 1936, and have since been continuously in possession. Had plaintiff—or Ostrow—made the obvious inquiry required of him, from the defendants known to be in possession, the

facts regarding the land contract disclosed by the probate court records were readily obtainable from defendants. Ostrow's excuse for refraining from contacting the defendants—"I knew I would get all the wrong information; all the misleading information I could possibly get"—shows that he was equally apprehensive that if he contacted the defendants he might discover facts, not disclosed by records, which would show that the defendants were in possession under a bona fide (but unrecorded) chain of title as to the ¼ interest Ostrow was then investigating. By his own admission Ostrow designedly refrained from making inquiry from the defendants in possession, although he had reason to believe that the defendants had the facts. This clearly distinguishes the instant case from *Holly Lumber & Supply Co.* v. *Friedel,* 271 Mich. 425, where Mr. Justice Edward M. Sharpe, writing for the court, said:

"We cannot find that Mr. Haddan designedly abstained from making inquiries, but we do find that he inquired from such sources as he thought should know the facts."

The record of transfers and conveyances of the title originally held by Jeremiah H. Hascall discloses that the defendants held undisputed record title to an undivided half interest in the property. Ostrow was engaged in the business of buying and selling real estate, stocks or bonds and other securities "or any other evidence of title or any other rights." Plaintiff Smelsey was engaged in the same business. Smelsey advised Ostrow there was a chance to acquire some interest in the property in question. Ostrow checked the title with the abstract company (Burton's), examined the probate court records, found certain conveyances of record to defend-

ants herein as grantees, checked the tax records, made inquiry of the woman who occupied the dwelling house property in question who told him she was paying rent to the defendants herein; but Ostrow studiously refrained from contacting the defendants herein with any inquiry as to title. A simple inquiry directed to the defendants in possession would undoubtedly have brought the truthful information that the defendants held equitable title by assignment of the original land contract, and legal title, although not of record, by quitclaim deed of the same ¼ interest from the same grantor under whom plaintiff now claims his title. The unrecorded title previously acquired by defendants in the ¼ interest now claimed by plaintiff on the ground that his quitclaim deed was recorded ahead of defendants' deed is not voided by the statute unless plaintiff was a subsequent purchaser in good faith. 3 Comp. Laws 1929, § 13304 (Stat. Ann. § 26.547).

Mr. Justice COOLEY, writing for the court, in *Converse* v. *Blumrich*, 14 Mich. 109, 120 (90 Am. Dec. 230), declared:

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them: *Mayor of Baltimore* v. *Williams*, 6 Md. 235. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained."

"It is not competent to insist upon a state of ignorance when knowledge is the necessary consequence of admitted or established facts, or on any qualification of belief which is repugnant to reason

and experience." *Michigan Mutual Life Ins..Co.* v. *Conant,* 40 Mich. 530, 537.

"Good faith is not less important than the payment of value, and is not to be determined alone upon the testimony of the party that he acted in good faith; but he must show that from the inception to the conclusion of the transaction he had no notice or knowledge that could affect his conscience, or render it inequitable for him to make the purchase. And it must be remembered that this plaintiff is not putting forward this claim of being an innocent purchaser in good faith, without notice, as a shield to protect a possession acquired, but as a sword to attack the possession and rights of others. It rests with him, therefore, to disprove every fact and circumstance put in evidence by the defendants from which notice may legitimately be inferred, or which justifies the inference that it was his duty to inquire as to Lyon's ownership. He is chargeable with notice, not only where the evidence raises a presumption that he knew, but where there is just ground for inferring that reasonable diligence would have led him to a discovery of the truth. *Warren* v. *Swett,* 31 N. H. 332; *Nute* v. *Nute,* 41 N. H. 60. 'One who willfully remains ignorant where the rights of a third person are concerned, is as much in default as if he had the knowledge which he avoids. The question, therefore, is not merely did the "plaintiff" know, but had he sufficient information to render it his duty to inquire, and would an investigation in the ordinary course of business have led to a discovery of the' title claimed by the opposite party; 'or, as the rule is sometimes stated, a purchaser has notice, not only of what is definitely communicated to him, but of all that a proper use of that information would have enabled him to ascertain.' *Oliver* v. *Sanborn,* 60 Mich. 346, 354.

"If defendant had been acting in good faith in the transaction, while he was making an effort to ascertain if the title was clear, and what rights

complainant had, if any, he would have made inquiry of the very person who could have given him the information he was seeking. This he did not do, though on the very day he was making the purchase he met and talked with complainant.

"It is not necessary to consider the doctrine of constructive notice in disposing of this case. A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. *Mayor of Baltimore* v. *Williams,* 6 Md. 235.

"If one has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make but on the contrary studiously avoids making, such inquiries, he must be taken to have notice of those facts which, if he had used such ordinary diligence, he would have readily ascertained. *Whitbread* v. *Jordan,* 1 Younge & C. Ex. 303 (160 Eng. Rep. 123); *Jackson, L. & S. R. Co.* v. *Davison* (syllabus), 65 Mich. 417, 437." *Hains* v. *Hains,* 69 Mich. 581, 587.

Plaintiff's right to judgment in ejectment depends upon his claim that by the prior recording of his quitclaim deed to an undivided ¼ interest in the property without notice of defendants' prior unrecorded deed, he acquired title to the said interest as against defendants. Such right depends upon whether he became a subsequent purchaser in good faith, wherefore defendants' prior unrecorded deed would be void as to him, by virtue of the above-cited statute. Under the facts and circumstances of the case plaintiff was not a purchaser in good faith, and defendants' deed was not void as to him. Plaintiff did not have title as against defendants and for that reason his action of ejectment must fail.

Reversed and remanded for entry of judgment for defendants, with costs.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, and REID, JJ., concurred with BOYLES, J.